IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

TRAVIS FRANCE                                                                                    PLAINTIFF

    v.                      Civil No. 07-5042

CAPTAIN HUNTER PETRAY,
Benton County Detention Center;
NURSE ANDREA GARRETT;
and DR. HUSKINS                                                                                  DEFENDANTS

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

The plaintiff, Travis France (hereinafter France), filed this civil rights action pursuant to 42 U.S.C. § 1983. He proceeds *pro se* and *in forma pauperis*.

While incarcerated at the Benton County Detention Center, plaintiff maintains his First Amendment rights were violated when he was not provided a diet in compliance with the dictates of his religion. Defendants filed a motion for summary judgment (Doc. 15). To assist plaintiff in responding to the motion, a questionnaire was propounded (Doc. 18). Plaintiff filed a timely response to the questionnaire (Doc. 20). The summary judgment motion is before the undersigned for issuance of this report and recommendation.

### Background

France was booked into the Benton County Detention Center (BCDC) on June 23, 2006, on charges of commercial burglary and theft of property. *Response* (Doc. 20)(hereinafter *Resp.*) at ¶ 1. He was issued a bail bond by First Arkansas Bail Bonds on June 25, 2006, and was released from the BCDC. *Id.* at ¶ 2.

He was booked back into the BCDC on July 17, 2006, after violating his probation. *Resp.* at ¶ 3. He obtained a bail bond on July 26th and was again released from the BCDC. *Id.* at ¶ 4.

On August 4, 2006, he was again booked into the BCDC. *Resp.* at ¶ 5. When he was booked into the BCDC he was given a copy of the detainee rules and provided a copy of the handbook. *Id.* at ¶ 6. On August 4th he plead guilty to breaking or entering and theft of property and was placed on probation for thirty-six months and was ordered to pay restitution including $5,760.00 to Freedom Power Sports and $500 to Benton County. *Id.* at ¶ 7.

He signed the inmate telephone system notice and medical insurance information forms when he was booked in on August 4th. *Resp.* at ¶ 8. On August 4, 2006, a warrant was served on him by Detective Eric Van Dyke for residential burglary and theft or property. *Id.* at ¶ 9.

Captain Hunter Petray is the jail administrator of the BCDC. *Resp.* at ¶ 10. While France concedes he did not indicate when he was booked in that he was a Seventh Day Adventist, he states he was not asked. *Id.* at ¶ 11.

A vegetarian diet at the BCDC contains the same vegetables, starch and grain servings as a standard diet at the BCDC but all meat is substituted with a serving of peanut butter, cheese and an extra dairy serving. *Resp.* at ¶ 12. According to Captain Petray, the vegetarian diet is only given to inmates with doctor ordered dietary needs and inmates who have indicated to jail staff upon booking and in writing that their religion prohibits the inmate from consuming meat. *Defts' Ex.* 2 at ¶ 5. According to Petray, several inmates have submitted grievances requesting to be placed on a vegetarian diet, after viewing the vegetarian trays, and based only on personal

taste and preference. *Id.* at ¶ 6. Petray maintains it is not economically feasible, or efficient, for kitchen staff to cater to each individual inmate according to his or her personal taste or preference. *Id.* at ¶ 7.

Defendants maintain France did not submit his first request for a vegetarian diet until he had been incarcerated at the BCDC for two and a half months. *Defts' Ex.* 2 at ¶ 10. France denies this but does not indicate when he first requested a vegetarian diet. *Resp.* at ¶ 17. When he did request a vegetarian diet, Petray denied France's request. *Id.* at ¶ 18.

The first written request that appears in the record from France is dated October 26, 2006. France was asked the following regarding this request: "You submitted your first request for a vegetarian tray on October 26, 2006. You stated it was against your religion to eat meat. You indicated you were a Seventh Day Adventist." *Resp.* at ¶ 19(A). He responded: "Agree."

Prior to October 26th, France indicates he was eating the sides on his tray and then trading his meat for bread. *Resp.* at ¶ 19(C). He states he wasn't eating the meat. *Id.* Prior to his incarceration, he indicates he was following a vegetarian diet. *Id.* France cannot recall what happened when he saw the nurse in response to his October 26th request. *Id.* He states it was too long ago. *Id.*

On October 27th France submitted a medical request. *Resp.* at ¶ 20. He stated it was against his religion to eat meat. *Id.* He also indicated he was allergic to cheese. *Id.* He stated he was lactose intolerant. *Id.* He indicated he would like a vegetarian tray or something because all he was eating was his bread and sides and was getting hungry throughout the day. *Id.*

Petray responded on the 30th. *Resp.* at ¶ 21. He stated France did not say this when he came into the jail and did not mention being lactose intolerant. *Id.* He stated France would remain on the same diet. *Id.*

On October 30th France submitted a grievance. *Resp.* at ¶ 22. He stated the nurse would not give him a vegetarian tray. *Id.* He stated it was against his religion to eat meat and the nurse would not give him a special tray. *Id.* In response, Petray wrote the medical staff had nothing to do with religious diets. *Id.* at ¶ 23.

On November 20th France submitted a medical request. *Resp.* at ¶ 24. He wrote that he was a Seventh Day Adventist and also lactose intolerant. *Id.* He asked if he could get a special tray. *Id.* Nurse Garrett wrote in response that it was not stated on his intake sheet and she was unable to approve. *Id.* at ¶ 25.

On December 4th France submitted a medical request. *Resp.* at ¶ 26(A). He stated he was now a Seventh Day Adventist and it was against his religion to eat meat. *Id.* He asked if he could get something for it. *Id.* In response, Nurse Garrett wrote that his intake sheet showed his religion was not specified. *Id.* at ¶ 27.

On February 6, 2007, France wrote a statement in which he said that in October of 2006 another inmate came in who was vegetarian and lactose intolerant. *Id.* He indicated the other inmate was getting a special tray and said he told France he got the special tray by putting in a medical request and telling the nurse. *Id.* France indicates this is why he put in a medical form on October 26, 2006. *Id.* France indicates he lost forty pounds because he only eats the bread and sides. *Id.*

AO72A
(Rev. 8/82)

France was asked how Dr. Huskins violated his constitutional rights. *Resp.* at ¶ 30. France replied that it was because Dr. Huskins never saw him. *Id.* France indicates he was never allowed to see the doctor about his request to be placed on a vegetarian diet. *Resp.* at ¶ 16.

## Summary Judgment Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

## Discussion

Defendants have now moved for summary judgment. First, defendants maintain they are sued in their official capacities only. As there is no proof of a policy or custom that was the

moving force behind the violation of France's personal religious rights, defendants maintain they are entitled to judgment as a matter of law. Second, defendants contend France cannot prove a constitutional violation of his religious freedom by denial of a vegetarian tray. Third, defendants, alternatively contend they are entitled to qualified immunity.

### *Official versus Individual Capacity Claims*

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States. In order to state a claim under 42 U.S.C. § 1983, plaintiff must allege that the defendant acted under color of state law and that he violated a right secured by the Constitution. *West v. Atkins*, 487 U.S. 42, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988); *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir.1999). The deprivation must be intentional; mere negligence will not suffice to state a claim for deprivation of a constitutional right under § 1983. *Daniels v. Williams*, 474 U.S. 327, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986); *Davidson v. Cannon*, 474 U.S. 344, 106 S. Ct. 668, 88 L. Ed. 2d 677 (1986).

Under § 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or claims may be stated against a defendant in both his individual and his official capacities. In *Gorman v. Bartch*, 152 F.3d 907 (8th Cir. 1998), the Eighth Circuit discussed the distinction between individual and official capacity suits. As explained by the *Gorman* case:

> Claims against government actors in their individual capacities differ from those in their official capacities as to the type of conduct that is actionable and as to the type of defense that is available. *See Hafer v. Melo*, 502 U.S. 21, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991). Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself. *Id.* 502 U.S. at

AO72A
(Rev. 8/82)

> 24-27, 112 S. Ct. at 361-62 (1991). Personal capacity claims, on the other hand, are those which allege personal liability for individual actions by officials in the course of their duties; these claims do not require proof of any policy and qualified immunity may be raised as a defense. *Id.* 502 U.S. at 25-27, 112 S. Ct. at 362.

*Gorman*, 152 F.3d at 914.

The Eighth Circuit has consistently advised plaintiffs to specifically plead whether government agents are being sued in their official or individual capacities to ensure prompt notice of potential personal liability. *Nix v. Norman*, 879 F.2d 429, 431 (8th Cir. 1989). *See also Andrus v. Arkansas*, 197 F.3d 953 (8th Cir. 1999)(In actions against officers specific pleading of individual capacity is required to put public officials on notice they will be exposed to personal liability). When the plaintiff fails to state whether he is suing an official in his individual capacity, the Eighth Circuit has construed the claim to be against the official in his official capacity only. *See Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999)("[I]n order to sue a public official in his or her individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings, otherwise, it will be assumed that the defendant is sued only in his or her official capacity."); *Egerdahl v. Hibbing Community College*, 72 F.3d 615, 620 (8th Cir. 1995)("*Nix* requires that a plaintiff's complaint contain a clear statement of her wish to sue defendants in their personal capacities. Neither a cryptic hint in a plaintiff's complaint nor a statement made in response to a motion to dismiss is sufficient.").

A review of the complaint in this case shows that plaintiff has failed to specifically plead whether the individually named defendants were being sued in their official or individual capacity. However, the court has an obligation to liberally construe a pro se complaint. *Haines v. Krener*, 404 U.S. 519, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972). *See also White v. Wyrick*, 530 F.2d 818, 819 (8th Cir. 1976)(finding pro se petition should be "interpreted liberally and . . .

-7-

AO72A
(Rev. 8/82)

should be construed to encompass any allegation stating federal relief"). In so doing, we must keep in mind that the plaintiff is without legal expertise and he prepared his own pleading. *Bracken v. Dormire*, 247 F.3d 699, 704 (8th Cir. 2001). For this reason, we construe France's complaint to be asserting both individual and official capacity claims.

### *Diet Inadequate to Satisfy the Dictates of Religion*

It has been held, that the First Amendment may be violated if an inmate is not served food that meets the dictates of his religion. In cases involving religious dietary restrictions, an inmate must be provided with an adequate diet that does not violate the inmate's religious beliefs. *See e.g., McElyea v. Babbitt*, 833 F.2d 196, 198 (9th Cir. 1987)(inmates entitled to diet sufficient to sustain health and satisfy religious dictates).

In order to present a valid First Amendment claim, France has the "burden of establishing that the alleged religious belief or ritual in question [here a vegetarian diet] is based on a teaching of the [Seventh Day Adventist] religion, that [his] belief in the teaching is sincerely held, and that the governmental action in question actually infringes upon [his] free exercise of this belief." *Goff v. Graves*, 362 F.3d 543, 547 (8th Cir. 2004).

To substantially burden one's free exercise of religion the regulation:

must significantly inhibit or constrain conduct or expression that manifests some central tenet of a person's individual religious beliefs; must meaningfully curtail a person's ability to express adherence to his or her faith; or must deny a person reasonable opportunities to engage in those activities that are fundamental to a person's religion.

*Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 813 (8th Cir. 2008)(*quoting Murphy v. Mo. Dept. of Correction*, 372 F.3d 979, 988 (8th Cir. 2004)).

AO72A
(Rev. 8/82)

In this case, France contends his First Amendment right to free exercise of religion was violated because he was "denied" a vegetarian diet. Captain Petray and Nurse Garrett denied France's requests for a religious diet based on the fact that France's intake papers did not reflect the fact that he was a Seventh Day Adventist and as a result followed a vegetarian diet. France maintains he was not asked at intake about his religion.

Defendants do not point the court to anywhere on the intake papers submitted as exhibits where the religion of an inmate is noted on the booking report or intake papers. Defendants did not dispute France's assertion that he lost forty pounds because of the insufficient quantity of food he received as a result of only eating sides and bread to avoid the meat on his trays.

Defendants, however, contend that France waited two and a half months before asking for a vegetarian diet and this fact shows the absence of proof of a legitimate or sincere religious belief which prevents them from being held responsible for unduly limiting or burdening his religious practice. Additionally, defendants assert a vegetarian diet is not a central tenet of the Seventh Day Adventist religion but only a recommendation.

"First Amendment protection only attaches to beliefs rooted in religion, as opposed to purely secular beliefs or personal preferences." *Love v. Reed*, 216 F.3d 682, 687 (8th Cir. 2000)(*citing Thomas v. Review Board of Indiana Employment Security Division*, 450 U.S. 707, 713, 101 S. Ct. 1425, 67 L. Ed. 2d 624 (1981)). "The determination of what is a 'religious' belief or practice is more often than not a difficult and delicate task .... However, the resolution of that question does not to turn upon a judicial perception of the particular belief or practice in question; religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection." *Thomas,* 450 U.S. at 714.

AO72A
(Rev. 8/82)

In *Love*, the court held that the belief of a prison inmate who was a self-proclaimed adherent of the "Hebrew religion" and derived his beliefs from his own interpretation of the Old Testament that he could not work on the Sabbath or eat food prepared by others on that day was a "religious preference" that was protected by the Free Exercise Clause of the First Amendment. *Love*, 216 F.3d at 688. The Eighth Circuit held that the prison substantially burdened Love's rights when it refused to provide him food from the prison's kitchen on Saturday for consumption on Sunday. *Id.* It held prison inmates were entitled to reasonable accommodation of their religious dietary needs. *Id.* It concluded Love had no consistent and dependable way of exercising his right to observe his Sabbath without the accommodation he requested. *Id.* The court held the Arkansas Department of Correction's failure to provide the requested accommodation substantially burdened Love's ability to freely exercise his religion.

In this case, with respect to Captain Petray and Nurse Garrett, we believe genuine issues of material fact preclude summary judgment in their favor. While defendants maintain the Seventh Day Adventist religion does not mandate adherence to a vegetarian diet the materials submitted by defendants indicate the vegetarian diet is certainly recommended and we cannot say on the record before us that France's adherence to the diet was not rooted in religious belief. *See Defendants' Exhibit* 4 ("For more than 130 years Seventh-day Adventists (SDAs) have practiced a vegetarian dietary lifestyle because of their belief in the holistic nature of humankind. Whatever is done in eating or drinking should honor and glorify God and preserve the health of the body, mind and spirit. The recommended lacto-ovo-vegetartian diet . . . .").

AO72A
(Rev. 8/82)

In this case, the regulation or policy at issue is BCDC's policy of providing a vegetarian diet only to those inmates who make a written request for such a diet at the time of intake for religious or health reasons. Requests made at a later time are not honored.

In *Turner v. Safely*, 482 U.S. 78, 89-90, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987), the Court set forth a reasonableness test consisting of four factors used to balance an inmate's free exercise right and the prison's legitimate correctional goals and security concerns. Specifically, the court considers: (1) whether there exists a rational connection between the prison policy or regulation and a legitimate governmental interest advanced as its justification; (2) whether there are alternative means of exercising the right notwithstanding the policy or regulation; (3) what effect accommodating the exercise of the right would have on guards, other prisoners, and prison resources generally; and (4) whether there are ready, easy-to-implement alternatives that would accommodate the prisoner's rights. *Turner*, 482 U.S. at 89-91.

As noted above, France maintains he was not asked at intake about his religion. Further, defendants have not pointed the court to any place on the intake papers where France's religious preference is noted or where there is a place for his religious preference or diet to be noted. Moreover, the policy makes no provision or allowance for inmates who convert to a religion that has dietary restrictions once incarcerated. The court cannot say that there is no genuine issue of fact as to whether France was provided with a diet sufficient to sustain his good health without violating his religion's dietary laws. *See e.g., Kahane v. Carlson*, 527 F.2d 492, 496 (2nd Cir. 1975).

AO72A
(Rev. 8/82)

However, with respect to Dr. Huskins, there is no indication he was involved in anyway in the decision to deny France a vegetarian diet. We therefore believe he is entitled to summary judgment in his favor.

*Qualified Immunity*

We note defendants also maintain they are entitled to qualified immunity. "Qualified immunity is a defense available to government officials who can prove that their conduct did 'not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Carroll v. Pfeffer*, 262 F.3d 847, 849 (8th Cir. 2001)(*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)). "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 112 S. Ct. 534, 537, 116 L. Ed. 2d 589 (1991)(*quoting, Malley v. Briggs*, 475 U.S. 335, 343, 341, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986)). The inquiry is normally one of pure law. *J.H.H. v. O'Hara*, 878 F.2d 240 (8th Cir. 1989).

"The determination of whether a state actor is entitled to the protection of qualified immunity is a two-step process." *Washington v. Normandy Fire Protection Dist.*, 272 F.3d 522, 526 (8th Cir. 2001). First, the court must ask whether "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the [defendants'] conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001). Second, the court must determine if the right was clearly established. *See Washington*, 272 F.3d at 256. There is no question that the right to the Free Exercise of Religion in a detention center or penal institution is clearly established. *See e.g., Thomas v. Gunter*, 103 F.3d

AO72A
(Rev. 8/82)

700 (8th Cir. 1997). Similarly, it is clearly established that an inmate has the right to a diet sufficient to satisfy the dictates of his religion. *See e.g., Makin v. Colorado Dept. of Corrections*, 183 F.3d 1205, 1211 (10th Cir. 1999)(prison officials' failure to accommodate inmates' meal requirements during the Muslim holy month of Ramadan violated his First Amendment right to free exercise of his religion); *McElyea v. Babbitt*, 833 f.2d 196, 198 (9th cir. 1987)(inmates have the right to be provided food that satisfies the dietary laws of their religion); *Kahane v. Carlson*, 527 F.2d 492, 495 (2nd Cir. 1975)(prison officials must accommodate right of prisoners to receive diet consistent with prisoners religious scruples).

As discussed in more detail above, there are genuine issues of material fact as to whether the defendants Petray and Garrett substantially burdened France's First Amendment rights when they refused him a vegetarian diet. Defendants' arguments in favor of qualified immunity depend on the court concluding France does not hold a sincere religious belief in following a religious diet and instead merely has a personal preference for such a diet. At this stage, we cannot resolve the factual disputes in the defendants' favor. *See e.g., Wilson v. Lawrence County*, 260 F.3d 946, 951 (8th Cir. 2001)("arguments asserting qualified immunity rest largely on ignoring disputed facts in the record and asking this court to resolve factual disputes in [defendant's] favor.").

## **Conclusion**

For the reasons stated, I recommend that the motion for summary judgment (Doc. 15) be granted in part and denied in part. Specifically, I recommend that all claims against Dr. Huskins be dismissed. In all other respects, I recommend that the motion be denied.

AO72A
(Rev. 8/82)

**The parties have ten days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 29th day of July 2008.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)